**UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KIMBERLEY INGRAM,** individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00309-WMS-LGF** |
| *Plaintiff,* | Hon. Judge William M. Skretny Hon. Magistrate Judge Leslie F. Foschio |
| *v.* | |
| **JAMESTOWN IMPORT AUTO SALES, INC. d/b/a KIA OF JAMESTOWN**, | **CLASS ACTION** |
| *Defendant.* | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Kimberley Ingram, on behalf of herself and a class of similarly situated persons, and with the consent of Jamestown Import Auto Sales Inc. d/b/a KIA of Jamestown ("Defendant"), has filed a motion (the "Motion"), contemporaneous herewith, seeking final approval of a proposed settlement of this case, including Plaintiffs' individual and class claims. This brief is submitted in support of that Motion.

I.     **INTRODUCTION**

The Settlement Agreement requires Defendant to deposit **$500,000.00** to create a common fund to benefit Settlement Class Members ("Settlement Fund"). The Settlement Agreement was filed on December 2, 2022, [DE #28-2], and is reattached here as **Exhibit 1**.

Pursuant to the Settlement Agreement, there is no claims process. All Settlement Class Members will automatically receive a Claim Settlement Check and there is no reverter to the Defendant. The Settlement Fund will also be used to the pay the costs of settlement administration, notice, attorneys' fees and costs. If any funds remain in the Settlement Fund which cannot be

1

distributed to Settlement Class Members, then the money will go to an approved Cy Pres Recipient. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, litigation centered on unsettled legal questions.

Counsel for Plaintiff and Defendant are well versed in TCPA litigation and the nuances of each of Plaintiff's claims and Defendant's defenses to both class certification and liability. There can be no doubt that this Settlement is a fair and reasonable recovery in light of Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement.

The Parties' proposed Settlement provides immediate automatic monetary relief for each Settlement Class Member where their recovery, if any, would otherwise be uncertain. Settlement was only reached after first engaging in discovery, extensive negotiations, and assistance from a Mediator the Hon. Morton Denlow. Settlement was not conditioned on any number of attorneys' fees for Class Counsel or incentive award for Plaintiff, which speaks to the fundamental fairness of the process. *See* Declaration of Manuel Hiraldo ("Hiraldo Decl."), attached hereto as **Exhibit 2**, at ¶ 11.

## II.     BACKGROUND

Defendant initiated a prerecorded message campaign in which 3,810 prerecorded voice calls were sent using Call Loop, Inc. to the telephones of Plaintiff and approximately 3,000 others. Plaintiff alleges these individuals never provided Defendant with consent for such calls and that Defendant's marketing campaign violated the Telephone Consumer Protection Act ("TCPA"). Defendant denies any and all wrongdoing and contends that it complies fully with the TCPA. Specifically, Defendant contends that it had consent to contact Settlement Class Members because some (or all) of the prerecorded voice calls at issue were not marketing, and therefore only express consent and not the heightened TCPA standard of prior express written consent was required.

Defendant alternatively claims to have prior express written consent for some (or all) of the Settlement Class Members which would preclude any liability under the TCPA.

Following Mediation on October 3, 2022, the Parties executed a Settlement Agreement on November 30, 2022 [DE #28-2], and moved for Preliminary Approval of the Class Action Settlement on December 2, 2022. [DE #28, #28-1]. This Court granted Preliminary Approval of the Class Action Settlement on January 6, 2023. [DE #29], and scheduled a Final Approval Hearing to take place on June 7, 2023 at 11:00 a.m.

Pursuant to the Court's order granting preliminary approval, the Parties sent out notice to members of the Class to gauge their reaction to the proposed Settlement, as well as every state Attorney General in the Country. The results have been overwhelmingly positive. **Not a single member of the settlement class has either objected to the Settlement or asked to be excluded from the Settlement**. Moreover, no state Attorney General raised concerns with the Settlement proposal. It is rare in any class action settlement to have such unanimous class and regulatory support. The preliminarily approved Settlement provides an outstanding recovery for Class Members and, as discussed herein, also satisfies all Second Circuit criteria for final settlement approval.

Accordingly, Plaintiff respectfully requests that this Court enter an Order as follows: (1) granting Final Approval to the Settlement; (2) finally certifying the proposed Settlement Class for settlement purposes, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as the Class Representative; (4) appoint as Class Counsel Manuel S. Hiraldo, Ignacio J. Hiraldo, Andrew Shamis, and Michael Eisenband; (5) grant Plaintiff's request for Attorneys' Fees, Costs, and Class Representative Incentive Award and (6) enter Final Judgment.

A proposed order is attached hereto.

### III.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement Agreement is reattached hereto as **Exhibit 1**.  The following is a summary of its material terms.

#### a.  **The Settlement Class**

The proposed Settlement establishes a Settlement Class as follows:

**All persons within the United States who, between April 22, 2018 to present, were called with a prerecorded voice message regarding Defendant's property, goods, and/or services.**

Agreement Section DD.  Excluded from the Settlement Class are: (1) the trial judge presiding over this case; (2) Defendant, as well as any parent, subsidiary, affiliate, or control person of Defendant, and the officers, directors, agents, or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely opted out of this proceeding; (6) Plaintiff's Counsel, their employees, and their immediate family and (7) all persons who file a timely and proper request to be excluded from the Settlement Class in accordance with Section III(D) of the Settlement Agreement.

#### b.  **Settlement Consideration**

Pursuant to the Settlement, Defendant has agreed to deposit **$500,000.00** for the benefit of Settlement Class Members. If this Court fully approves the Settlement each Settlement Class Member will automatically receive a check estimated at $85.19.[1] Agreement at II(B)(1). There is no claims process and there is no reverter to the Defendant. *See* Agreement at III(F)(1). Any money remaining from uncashed checks to the Settlement Class Members will be redistributed to Settlement Class Members who cashed their initial Claim Settlement Check. *See* Agreement at III(F)(3).  If redistribution is not economically feasible, the money will go to a Cy Pres Recipient

---

[1] ($500,000 [Settlement Fund] - $5,000 [Service Award]- $75,000 [Notice and Administrative Costs] - $165,000 [Attorneys' Fees] = $255,000 divided by 2993 [Settlement Class Members]) = **$85.19**).

approved by this Court. *Id*.

### c. **Claims Process**

No claim forms are required. Each Settlement Class Member who has not excluded themselves from this Settlement Agreement shall be automatically paid from the Settlement Fund.

### a. **Class Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendant from claims related to the subject matter of the Action. The detailed release language is found at Section V of the Settlement Agreement, pgs. 24-25. *See also id.* at pg. 8, at ¶ Y-Z (defining "Released Claims" and "Released Parties").

### b. **Settlement Notice**

The Court granted the Plaintiffs' Motion for Preliminary Approval of the Settlement on January 6, 2023 and in doing so also approved the Settlement Class Notice proposed by Plaintiff. Using the forms approved of by this Court, Plaintiff, through the Settlement Administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq") provided notice to the Settlement Class. Notice was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. *See* Hiraldo Decl. at ¶ 2. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *Id.* at ¶ 3. The Notices constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process. All Notices used to contact the Settlement Class have been approved by this Court. *Id.* at ¶ 4.

The Class Notice Plan was designed to reach the greatest practicable number of Settlement Class Members with individual notice and be further enhanced by a Settlement Website. *See* Declaration of Cameron R. Azari ("Epiq Decl.") attached hereto as **Exhibit 3**, at ¶ 12.  The Class Notice Plan is consistent with other court-approved notice plans, is the best notice practicable under the circumstances, and satisfied the requirements of due process, including its "desire to actually inform" requirement. *Id*.

On December 12, 2022, Epiq sent 57 CAFA Notice Packages ("CAFA Notice") on behalf of Defendant Jamestown Import Auto Sales d/b/a Kia of Jamestown, as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715. *Id*. at ¶ 13.  The CAFA Notice was mailed via United States Postal Service ("USPS") certified mail to 56 officials (the Attorneys General of each of the 50 states, the District of Columbia, and the United States Territories) and sent via United Parcel Service ("UPS") to the Attorney General of the United States. *Id*.

On January 17, 2023, Epiq received one data file with contact information for identified Settlement Class Members, which included the following possible data for each record: name, telephone number(s), e-mail address, and/or physical mailing addresses. *Id*. at ¶ 16. After receipt of the data, Epiq sent the records with unique telephone numbers without a complete physical mailing address to a third-party reverse lookup service to perform "reverse lookups". *Id*. at ¶ 17. The reverse lookup process was used to obtain a name and the most likely current physical mailing address for each identified telephone number that was sent. *Id*.  Subsequently, Epiq deduplicated the data and rolled-up records where there was an exact match and loaded the identified Settlement Class Member records into its database.  As a result of this process, 3,028 unique Settlement Class Members were identified. *Id*. at ¶ 18.

On February 7, 2023, Epiq sent an E-mail Notice to 2,547 identified Settlement Class

Members for whom a valid e-mail address was available. *Id*. at ¶ 19. Industry standard best practices were followed for the e-mail notice efforts.  *Id*.   For any E-mail Notice for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical autoreplies, etc., at least two additional attempts were made to deliver the Notice by e-mail. *Id.* at ¶ 20.

Epiq is in the process of preparing to send a Mail Notice to Settlement Class Members who have an associated physical mailing address and whose E-mail Notice was undeliverable after multiple attempts or for whom Epiq does not have an available e-mail address.  The Mail Notices will be sent via USPS first-class mail.  *Id*. at ¶ 21. Prior to sending the Mail Notice, all mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information was up-to-date and accurately formatted for mailing *Id*. at ¶ 22

On February 6, 2023, Epiq established a neutral, informational Settlement Website (www.JamestownImportTCPASettlement.com) with an easy to remember domain name. *Id.* at ¶ 25. The Settlement Website allows Settlement Class Members to obtain detailed information about the case and review relevant documents, including the Long-Form Notice, Mailed Notice, Preliminary Approval Order, Complaint, Settlement Agreement, and Motion for Preliminary Approval. *Id.*

On February 6, 2023, Epiq established a toll-free telephone number (855-704-0487) to allow Settlement Class Members to call for additional information, listen to answers to FAQs, and to request that a Long-Form Notice be mailed to them.  *Id.* at ¶ 26. This automated phone system is available 24 hours per day, 7 days per week. *Id.* The toll-free telephone number was prominently displayed in all notice documents. *Id.*

Epiq has complied with all deadlines and Notice requirements of the Settlement Agreement and this Court's January 6, 2023 Order which granted Preliminary Approval of the Settlement Agreement. *Id*. at ¶ 35.

As of the date of Epiq's declaration, **<u>no objections and no requests for exclusion</u>** have been received. *Id*. at ¶ 28. Epiq will provide a supplemental declaration to the Court prior to the Final Approval Hearing to provide updated information regarding any requests for exclusion and/or objections to the Settlement. *Id.*

This Court-approved Notice Program and the Notices used satisfy due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977).  The Notice Program, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement and other important documents. Further, the Notices described Class Counsel's intention to seek attorneys' fees and expenses of up to 33% of the Settlement Fund or $165,000 and a Service Award of $5,000.00 for the Class Representative.  Hiraldo Decl. at ¶ 5. Hence, Settlement Class members were provided with notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)).

### c.   Class Counsel Fees and Expenses and Plaintiff's Service Award

The Settlement Agreement provides that Plaintiff will request from the Court a reasonable amount for Attorneys' Fees and Expenses. Agreement at II.D. Such award will serve to compensate Class Counsel for the time, risk and expense they incurred pursuing claims on behalf of Settlement Class members.  Plaintiff will also ask the Court to approve a reasonable amount for a Service Award for herself. *See* Agreement at II.D. There is no clear sailing provision for either attorneys' fees or Service Award which again speaks to the fairness of the Agreement. *See* Hiraldo Decl. at ¶ 12.

The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

## IV.   ARGUMENT

"'The compromise of complex litigation is encouraged by the courts and favored by public policy.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87) (4th ed. 2002)). The Second Circuit is "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context." *Id.* (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). As such, class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005). Therefore, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement

9

reached in arm's-length negotiations between experienced, capable counsel" *Frank*, 228 F.R.D. at 184 (internal citation omitted). This presumption has been easily met in this case, where, as discussed more fully in the preliminary approval papers, the parties only reached the settlement after extensive negotiations between the parties and mediation with the assistance of a third-party neutral.

In evaluating the adequacy of a settlement agreement, courts within the Second Circuit look to nine factors first enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (*abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48 (2d Cir. 2000))[2]. Further, when considering "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). In this case, the factors weigh heavily in favor of final settlement approval.

### A.  Complexity, Expense, and Likely Duration (Grinnell Factor 1)

The Settlement avoids further expense and delay and ensures recovery for the Class. As courts recognize, most "class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).

---

[2] The factors include: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the state of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Were this matter to continue as a class action, it could take years before it ends. The Parties would have to draft and file expensive and time-consuming dispositive motions. Assuming they were denied, the Parties would have to prepare for and try the litigation on a class action basis, hire expert witnesses and litigate the appropriateness of class certification. Any trial would rest on numerous disputed issues of fact, the resolution of which would consume tremendous amounts of time and resources. Both sides would produce numerous witnesses, and any verdict would likely be appealed. Telephone Consumer Protection Act Class Action litigation is extremely complex and expensive and normally requires multiple depositions, multiple subpoenas, and expert witnesses on both sides. It is also uncertain. Very few TCPA class actions actually progress into a class-wide recovery and often times any class-wide recovery can takes years. Due to their significant experience in TCPA class action litigation, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. *See* Hiraldo Decl. at ¶ 13. This Settlement, in contrast, makes monetary relief available to Class Members promptly and efficiently.

### B. Reaction of the Class to the Settlement (Grinnell Factor 2)

"The reaction of Class Members to the settlement is the most significant factor in considering the fairness of the Settlement Agreement." *Karic v Major Automotive Cos*., 799 F. Supp. 2d 219 (E.D.N.Y. 2011). Here not a single Class Member objected to or opted out of the Settlement, demonstrating that Class Members approve of it. *See Donnelly v. Peter Luger of Long Island, Inc.*, No. 13 Civ. 1377, 2014 WL 12769046, at *5 (E.D.N.Y. Nov. 13, 2014) ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness."); *see also Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *5 (S.D.N.Y. Jan. 29, 2014) ("This favorable response demonstrates that the class approves the settlement and

supports final approval."). No objections or requests for exclusion have been received which speaks to the fundamental fairness of the Settlement Agreement.

### C. Stage of Proceedings and Amount of Discovery (Grinnell Factor 3)

Class Counsel is extremely well versed in TCPA litigation, with each attorney having been appointed as class counsel in multiple TCPA based class action lawsuits throughout the county. *See* Declaration in Support Of Plaintiff's Unopposed Motion For Preliminary Approval Of Class Settlement And Certification Of Settlement Class [DE # 28-3] ("Preliminary Approval Decl"), attached hereto as **Exhibit 4**. Accordingly, Class Counsel conducted a thorough investigation into the claims and defenses and did so drawing on their multiple years of experience in dealing with TCPA based class actions. Prior to Mediation, the Parties engaged in both formal and informal discovery (with Requests for Production and Interrogatories having been served on all Parties) and at Mediation Class Counsel were fully aware of the strengths and potential weaknesses of their case. Defense counsel is likewise extremely well versed in TCPA litigation. The fact that both sides have extensive experience in TCPA based class actions allowed the case to proceed to Mediation and for a fair settlement to be reached.

### D. Plaintiff Face Real Risks, Including Loss of the Class Action, If the Litigation Proceeded to Trial (*Grinnell* Factors 4 to 6)

While Plaintiff believes that she has strong claims and asserted them in good faith, Class Counsel recognizes that Defendant has excellent counsel who have mounted considerable defenses to liability and damages. "In weighing the risks of establishing liability and damages, the Court 'must only weigh the likelihood of success by the Plaintiff class against the relief offered by the settlement.'" *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014). If the Litigation continues, Plaintiffs face a potential dismissal of all class action claims. Defendant has raised the issue of consent, arguing that class members may have either given proper

consent under the TCPA based on their prior interactions with Defendant's car dealership. If this Court agreed, and the lawsuit was limited to just Plaintiffs' claims, the most Plaintiff could have ever recovered is $1,500. Class Counsel is experienced and realistic, and understands that the resolution of consent issues, the ability to maintain a class action through trial, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. To avoid these litigation risks, the Parties agreed to the Settlement.

**E. Defendants' Ability to Withstand a Greater Judgment and the Settlement vs. the Class's Possible Recovery (*Grinnell* Factors 7–9)**

The Settlement represents a significant recovery for the Class in light of both Defendant's ability to withstand a higher judgment and the Class's highest potential recovery. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455, n.2. Here, the Settlement is plainly reasonable. *Karic*, 2016 WL 1745037, at *7 ("Courts have found settlement funds representing far less than the maximum possible recovery to be reasonable."); *see also In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (approving settlement fund amounting to 16.5% of class's highest possible recovery). "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at *6 (S.D.N.Y. Mar. 21, 2013) (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)). The Settlement recognizes uncertainties in the Telephone Consumer Protection Act regarding consent and interrelated issues as to whether or not the calls in questions were marketing. The Settlement Agreement provides immediate monetary recovery without any

claims process which represents "a meaningful benefit to the Class Members, when considered against the obstacle of proving the Class Members' claims." *Karic*, 2016 WL 1745037, at *7.

### F. Rule 23 Has Been Satisfied

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. In considering a settlement, the first question for the Court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be certified for settlement purposes. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

### a. Numerosity

There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). In applying this rule, courts have consistently held that joinder is impracticable and numerosity is thus satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to a class with fewer than 100 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (stating that a class of 18 members met numerosity requirement); *West v. Cont'l Auto., Inc.*, No. 3:16-cv-502-FDW-DSC, 2017 U.S. Dist. LEXIS 87382, at *3 (W.D.N.C. June 7, 2017) (finding that approximately sixty (60) class members was sufficient to satisfy the numerosity requirement).

14

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 2,993 individuals throughout the United States and joinder of all such persons is impracticable.

### b. Commonality

The commonality requirement is "not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases." Conte, 1 NEWBERG ON CLASS ACTIONS 5th § 3:18; *see also Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (noting that "[t]he commonality requirement is relatively easy to satisfy") (quoting *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 187 (D. Md. 2003)). This requirement is easily met here for settlement purposes because there are multiple questions of law and fact – centering on Defendant's prerecorded messages – that are common to the Settlement Class. For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because she received a prerecorded voice message and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

### c. Typicality

Rule 23's Typicality Requirement provides that the claims or defenses of the representative parties must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative party has demonstrated typicality when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Frank*, 228 F.R.D. at 182 (quoting *In re Drexel Burnham Lambert Group,*

*Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Here, there are multiple questions of law and fact – centering on Defendant's prerecorded message marketing campaign – that are common to the Settlement Class.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because she received prerecorded voice messages and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

### d.  Adequacy of Representation

Rule 23(a)'s Adequacy of Representation Requirement provides that the representative parties fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). This requirement is grounded in due process concerns, as class members are constitutionally entitled to adequate representation before an entry of a judgment that binds them. *See Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). To determine whether putative class members have received adequate representation, this Court must consider: (1) whether "class counsel is 'qualified, experienced and generally able to conduct the litigation," and (2) whether class members have "antagonistic" interests. *See Frank*, 228 F.R.D. at 182 (quoting *Drexel Burnham Lambert*, 960 F.2d at 291). As argued in the Motion for Preliminary Approval of Class Action Settlement, Class Counsel respectfully submit that they are qualified, experienced, and able to conduct the proposed litigation as shown by the results achieved in this case. Furthermore*,* Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent

Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.

Having satisfied the requirements as to numerosity, commonality, typicality, and adequacy, the Settlement Class is appropriate for final certification under Rule 23(a).

### e.   Rule 23(b)(3) has Been Met

#### 1.      *Predominance*

The first requirement under Rule 23(b)(3) is that questions of law or fact common to Settlement Class Members predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

#### 2.      *Superiority*

Finally, the Court must determine whether a class action is superior to other methods of adjudication for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are: (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. *Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015). In settlement cases, courts need not consider the last factor. *Amchem Prods.*, 521 U.S. at 593. Here, a class action is superior to individual suits.

First, individual suits are unlikely here, because the probable recovery (even of full damages) is relatively small per Settlement Class Member, particularly compared to the expense of litigation. *See In re NeuStar, Inc.*, 2015 WL 5674798, at *8 (finding superiority satisfied where individual actions were "unlikely due to the size of probable recovery and expense of individual litigation). Where the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Amchem*, 521 U.S. at 617, a suit like this is well-suited for class action litigation. Second, Class Counsel is not aware of other pending individual litigation against Defendant regarding the practices at issue in this Action. Finally, it would promote judicial economy to resolve this case as a class before this Court rather than requiring individual plaintiffs to file separate lawsuits. *In re NeuStar, Inc.*, 2015 WL 5674798, at *9. Accordingly, a class action is a superior method of adjudication.

### f.   The Settlement Is Fair and Adequate

"There is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerholf, Inc.,* No. 1:08cv1310, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Hinkle v. Matthews*, No. 2:15-cv-13856, 2018 U.S. Dist. LEXIS 196130, at *6 (S.D. W. Va. Nov. 15, 2018) ("The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement."); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (noting that "[c]omplex litigation . . . can occupy a court's docket for years on end, depleting the resources of the Parties and the taxpayers while rendering meaningful relief increasingly elusive"). When reviewing a proposed settlement, the Court "must take into account 'the clear policy in favor of encouraging settlements . . . particularly in an area

where voluntary compliance by the Parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" *Lipuma,* 406 F. Supp. 2d at 1314 (quoting *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir. 1975)).

The Court of Appeals for the Second Circuit has set out the factors a trial court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate. *City of Detroit v. Grinell Corp.,* 495 F.2d 448 (2d Cir. 1974). As discussed, previously the settlement here satisfies all *Grinnell* factors.

Additionally, when a district court preliminarily approves a settlement after a hearing, the proposed settlement enjoys a presumption of fairness. *See Berkley v. U.S.,* 59 Fed.Cl. 675, 681 (2004) ("Settlement proposals enjoy a presumption of fairness afforded by a court's preliminary fairness determination."); *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) ("This preliminary determination establishes an initial presumption of fairness...."); *Martin v. Cargill, Inc.,* 295 F.R.D. 380, 383 (D. Minn. 2013) (accord); *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (accord).

Lastly, the deadline for Class Members to object to the settlement or request exclusion is May 8, 2023. As of _____, Epiq has not received a single objection to this Settlement Agreement or any requests for exclusion from the Settlement Agreement. Epic Decl. at ¶ 28. The positive reaction of Settlement Class Members speaks to the fairness of the Settlement Agreement.

### G. *The Court Should Award Plaintiff's Service Award Request*

In this case, the Plaintiff chose to serve as the named Plaintiff in this lawsuit after Class Counsel explained to her the responsibilities required. Cognizant of those responsibilities, Plaintiff began this lawsuit with the intent to vigorously pursue it, for herself and the benefit of the Class Members she represents. As Class Representative she kept abreast of the case's status, reviewed

19

documents provided to her by her Counsel, and discussed with her Counsel aspects of the case, discovery issues, and settlement negotiations. *See, e.g.,* Hiraldo Decl., at ¶¶ 7-9. Here, the named Plaintiff amply fulfilled her duties as Class Representative, and respectfully requests, and the Defendant does not oppose, a Service Award of $5,000 for her service as Class Representative. Notably, the Notice provided to Class Members notified them of Plaintiff's intention to seek a $5,000 Service Award and no objections have been received. *Se*e Hiraldo Decl., at ¶ 3.

"Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909, 2021 WL 736962, at *28-29 (N.D.N.Y. Feb. 25, 2021). Here, Plaintiff took a risk, and provided a valuable public service, by putting herself forward as the class representatives in this case. Hiraldo Decl., at ¶ 8. Lastly, Plaintiff kept abreast of the case's status, reviewed documents provided by her counsel, and discussed with counsel various aspects of the case, including the Settlement. *Id*. at ¶ 7. Plaintiff also aided Class Counsel in responding to discovery. *Id.* at ¶ 9. Without the help and aid of Plaintiff, the Settlement would have been impossible for Class Counsel to achieve. *Id*. at ¶ 6.

Plaintiff's request is reasonable and in line with other service awards provided in class action lawsuits. *See Reyes v. Altamarea Grp.*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug.16, 2011) (approving $15,000 service awards to three named plaintiffs in tip credit case); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving $10,000.00 service awards as "common in class action cases and . . . important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation,

the risks incurred by coming and continuing as a litigant, and any other burdens sustained by the plaintiff."); *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909, 2021 WL 736962, at *10-11 (N.D.N.Y. Feb. 25, 2021) (awarding $15,000 service awards to each class representative plaintiff); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2018 U.S. Dist. LEXIS 202526, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2019) (approving award of $50,000 for six plaintiffs and $100,000 for two plaintiffs); *Bravo v. Gale Triangle, Inc.*, 2017 U.S. Dist. LEXIS 77714, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (finding a $5,000 award reasonable for class representatives' participation throughout the litigation and the risk to their reputation); *In re Cotton*, No. 14-30287, 2019 WL 1233740, at *4 (W.D.N.C. Mar. 15, 2019) (J. Conrad) (approving a service award to each class representative in the amount of $10,000); see also *Ryals v. HireRight Sols., Inc.*, No. 3:09cv625, Dkt. No. 127 at 10 (E.D. Va. Dec. 22, 2011) (approving a service award to each class representative in the amount of $10,000); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238, 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (Approving a $10,000 service award).

## H.  *The Court Should Award Class Counsel's Fees Request*

It has long been the case that Plaintiff's attorneys in a successful class action lawsuit may petition the court for compensation relating to any benefits to the class that result from the attorneys' efforts. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). Rule 23(h) allows for the award of "reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement." Per the Agreement, the Notices mailed to Class Members Class Counsel requests fees of 33% of the Total Settlement Amount, or $165,000 as reasonable attorneys' fees. *See Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms

of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at \*26 (S.D.N.Y. 2013)); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445 ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million"); *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 U.S. Dist. LEXIS 26950, 2021 WL 508339, at \*5 (E.D.N.Y. 2021) ("Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness").

The Notice provided to Class Members notified them of Plaintiff's intention to seek a 33% in fees/costs and no objections have been received. *Se*e Hiraldo Decl., at ¶ 5. Class Counsel requests these fees based on the substantial amount of work performed and the significant risk that it undertook in prosecuting the Litigation purely on a contingency fee basis. *Id*. at ¶ 10. Furthermore, while Class Counsel is entitled to seek reimbursement of its costs which are over $10,000, it is foregoing doing so and instead seek only a percentage of the Settlement Fund. *See* Declaration of Michael Eisenband ("Eisenband Decl."), attached hereto as **Exhibit 5**, at ¶ 3.

"The trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also, e.g.*, *Sierra*, 2015 WL 10912856, at \*7 ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recover' method, which is with the 'trend in this Circuit.'" (citation omitted)); *Clark v. Ecolab Inc.*, No. 04-CIV-4488 (PAC), 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at \*9 (S.D.N.Y. May 11, 2010) (approving "fee award of one-third" of settlement fund as "consistent with the Second Circuit's decision in *Arbor Hill*" and *Goldberger* factors). "Attorneys who create a common fund to be shared by a class are

entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (2d Cir. 2008) (internal quotation omitted). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.*

Plaintiff respectfully submits that the percentage of the fund method is the most appropriate method for reviewing Class Counsel's fee request. The percentage of the fund method is the superior method for awarding attorneys' fees to Class Counsel because the lodestar method does not necessarily align the interests of Class Counsel with those of the Settlement Class. The percentage of the fund method aligns Class Counsel's interests with the Settlement Class's interests because the more the Settlement Class recovers, the more Class Counsel recovers. In contrast, the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district  courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 122 (2d Cir. 2005).

All factors from *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), favor approval of Class Counsel's fees requested here. First, Class Counsel spent significant time analyzing and researching the claims, analyzing documents, calculating damages, preparing and responding to discovery requests, preparing for and attending mediation, negotiating and preparing the Agreement, and preparing the Preliminary and Final Approval Motions. The second and third *Goldberger* factors, the magnitude, complexity, and the risks involved in the litigation, strongly favor approval of the fees requested. The Settlement resolves numerous litigation risks, not least

of which are the maintainability of Plaintiff's claims on a class action basis in federal court and unresolved questions of law concerning the Telephone Consumer Protection Act. The fourth *Goldberger* factor, the quality of the representation, favors approval of the fees requested. Class Counsel is highly experienced in litigating Telephone Consumer Protection Act class actions and the results speak for themselves. Not a single Class Member took issue with Class Counsel's fees. This indicates that the requested fees are reasonable. *See Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) ("If the class members themselves do not object [to the fees], then, that is some indication that the agreed-upon fee is reasonable."). Last, approving the fees requested is consistent with public policy, the sixth *Goldberger* factor. *See, e.g.*, *Caballero*, 2018 WL 6435900, at *6 ("[T]he public policy goal of providing an incentive for lawyers to take on complicated actions that assisted vulnerable communities is furthered by the attorneys' fee award in this case."); *Donnelly*, 2014 WL 12769046, at *7 ("[P]ublic policy favors a common fund attorneys' fee award in wage and hour class action lawsuits."); *Flores*, 2014 WL 321831, at *8 (same). "The percentage-of the-fund method also promotes early resolution" by "discourag[ing] plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method." *Donnelly*, 2014 WL 12769046, at *8.

In sum, all relevant factors that the Second Circuit uses to assess the reasonableness of a fee award all weigh in favor of approving the requested award.

### I.   *Big Brothers Big Sisters of America should be Approved as the Cy Pres Recipient*

Pursuant to the terms of the Settlement Agreement, any funds which remain after two full rounds of distribution to Settlement Class Members shall be distributed to a Court approved Cy Pres recipient. *See* Agreement at pg 9 "II" and pg 22. Notice provided to Class Members also notified them of the appointment of a Cy Pres Recipient and no objections have been received. See

Hiraldo Decl., at ¶ 3. Here, pursuant to the terms of the Agreement, the Parties have selected Big Brothers Big Sisters of America a nonprofit 501(c)(3) organization as the Cy Pres Recipient. Big Brothers Big Sisters of America is the nation's largest donor- and volunteer-supported mentoring network, Big Brothers Big Sisters makes meaningful, monitored matches between adult volunteers ("Bigs") and children ("Littles"), ages 5 through young adulthood in communities across the country.[3] It develops positive relationships that have a direct and lasting effect on the lives of young people.

## VII.   CONCLUSION

Plaintiff and Class Counsel respectfully submit that the Settlement presents an excellent result and genuine relief to the Settlement Class Members. Accordingly, Plaintiff respectfully requests that this Court enter an Order as follows: (1) granting Final Approval to the Settlement; (2) finally certifying the proposed Settlement Class for settlement purposes, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as the Class Representative; (4) appoint as Class Counsel Manuel S. Hiraldo, Ignacio J. Hiraldo, and Michael Eisenband; (5) granting Plaintiff's pending Motion for Attorneys' Fees, Costs, and Class Incentive Award (Dkt. No. 78); and (6) entering Final Judgment.

A Proposed Final Approval Order is attached hereto as **Exhibit 6.**

Dated: February 1, 2023

Respectfully submitted,

By:  *s/Andrew Shamis*
Andrew Shamis, Esq.
New York Bar No. 5195185
**SHAMIS AND GENTILE, P.A.**
14 NE 1st Ave, Suite 705

---

[3] *See* www.bbbs.org/about-us/

Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: ashamis@shamisgentile.com

By:  *s/ Ignacio Hiraldo*
Ignacio Hiraldo, Esq.
**IJH Law**
1200 Brickell Ave.
Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: 786-496-4469
*Pro Hac Vice*

By*: /s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
**HIRALDO P.A.**
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
T:  954-400-4713
E: mhiraldo@hiraldolaw.com
*Pro Hac Vice*

By*: /s/ Michael Eisenband*
Michael Eisenband, Esq.
**EISENBAND LAW P.A.**
Florida Bar No. 94235
515 E. Las Olas Blvd., Suite 120
Fort Lauderdale, FL 33301
T:  954-533-4092
E: MEisenband@Eisenbandlaw.com
*Pro Hac Vice*

**Attorneys for Plaintiff and the Putative Class**


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 21, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

26

/s/ *Michael Eisenband*
Michael Eisenband